UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT ROMANO, | Case No. 3:14-cv-00187-MMD-WGC |
| Petitioner, | |
| v. | ORDER |
| RENEE BAKER, et al., | |
| Respondents. | |

## I.    SUMMARY

This *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 comes before the Court for merits consideration of the remaining grounds of the first amended petition. (ECF No. 7.) Respondents have answered (ECF No. 38), and Petitioner has replied (ECF No. 48). For the reasons discussed herein, the Court denies the petition.

## II.    RELEVANT BACKGROUND

Petitioner in this action challenges his state court convictions of sexual assault with a minor under fourteen and lewdness with a child under fourteen. (ECF No. 7 at 2.) The charges arose from petitioner's sexual abuse of his then four-year-old daughter, J.R. (*See* Ex. 1 (Tr. 9-20).)[1] When J.R.'s mother first discovered the abuse on or about November 20, 2002, she grabbed a recorder to capture J.R.'s statements on audio tape. (Ex. 41 (Tr. 164).) She then contacted Child Protective Services and took J.R. to the hospital, where

---

[1]Exhibits cited in this order, comprising the relevant state court record, are found at ECF Nos. 21-28, 39 and 56.

J.R. was interviewed by Officer Luis Norris. (*Id.* at 165-66; Ex. 42 (Tr. 60).) J.R. was later interviewed by Child Protective Services Investigator Bill Sheldon and Sergeant Jay Roberts. (Ex. 42 (Tr. 84-88, 234).)

On January 10, 2003, petitioner was charged by way of indictment with four counts of sexual assault of a minor under fourteen and ten counts of lewdness with a child under fourteen. (Ex. 3.) Before trial, petitioner moved for a psychological examination of J.R. (Ex. 10.) The trial court granted the motion, but the Nevada Supreme Court, holding petitioner was not entitled to such an examination, vacated the ruling via a writ of prohibition. (Exs. 13, 15, 22 & 71.) Petitioner, who was out on bond, thereafter failed to appear for his February 1, 2006, calendar call. In response, the trial court issued a bench warrant for his arrest. (Exs. 28 & 29.)

Petitioner was not apprehended for nearly three years. He was located living in Florida under a false name. (*See* Ex. 34; Ex. 42 (Tr. 159-61.) After petitioner's return and before his rescheduled trial date, petitioner's counsel filed a second motion for psychological examination, a motion to suppress evidence or comment about petitioner's flight, and a motion to suppress all statements made to the police. (Exs. 72-74.) At a pretrial hearing, the trial court denied petitioner's motions. (*See* Ex. 38.)

Petitioner's trial commenced on May 12, 2009. (Ex. 41.) The jury ultimately found petitioner guilty of four counts of sexual assault and four counts of lewdness, and not guilty of the remaining four counts. (Ex. 44 (Tr. 71-72).) Petitioner was sentenced on July 7, 2009, to several consecutive terms of life with the possibility of parole after twenty years, and some consecutive and some concurrent terms of life with the possibility of parole after ten years. (Ex. 46.) Judgment of conviction was entered on July 14, 2009, and petitioner appealed. (Exs. 47 & 49.) The Nevada Supreme Court affirmed. (Ex. 57.)

Petitioner filed a post-conviction petition for writ of habeas corpus in state court, which was denied. (Exs. 59, 60 & 63.) On appeal, the Nevada Supreme Court affirmed. (Exs. 64 & 68.) Petitioner thereafter filed his federal habeas petition in this case.

### III.    LEGAL STANDARD

28 U.S.C. § 2254(d) provides the legal standards for this court's consideration of the merits of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent."

*Andrade*, 538 U.S. 63 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *See, e.g.*, *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." *Id.* at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *See Cullen*, 563 U.S. at 181.

4

1    As the state courts reached the merits of petitioner's claims, their decisions are

2    entitled to deference under AEDPA and may not be disturbed unless they were decisions

3    "with which no fairminded jurist could agree." *Davis v. Ayala*, -- U.S. --, 135 S. Ct. 2187,

4    2208 (2015).

5    **IV.    DISCUSSION**

6        Several grounds of the petition in this case were dismissed, entirely or partially,

7    following the Court's order on the respondents' motion to dismiss and petitioner's election

8    to abandon his unexhausted claims. (ECF Nos. 32, 33.) Following are the grounds that

9    remain for review, which the Court will address in turn.

10       **A. Ground 1**

11       In Ground 1, petitioner asserts that his right to due process was violated when the

12   State failed to file a notice of expert witness testimony as required by Nevada law. (ECF

13   No. 7 at 3, 71-73; ECF No. 49 at 2-8.) Specifically, petitioner argues that despite not being

14   noticed as an expert witness by the State, Bill Sheldon provided expert psychological

15   testimony at trial.[2] (ECF No. 7 at 3, 71-73; ECF No. 49 at 2-8.)

16       Preliminarily, whether the testimony was properly admitted as a matter of state law

17   is not reviewable in this habeas action. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) "[I]t is

18   not the province of the federal habeas court to reexamine state court determinations on

19   state-law questions. In conducting habeas review, a federal court is limited to deciding

20   _____

21       [2]Respondents argue that Sheldon testified as an expert only after petitioner's
     counsel opened the door, and thus petitioner cannot show that the trial court's decision
22   to allow Sheldon to testify as an expert was fundamentally unfair or arbitrary. The Court
     finds this argument to be without merit and does not resolve the claim on these grounds.
23   Respondents are correct that Sheldon's testimony as to bodily fluids, to the extent it could
     be considered expert testimony, was elicited for the first time by defense counsel. But the
24   *psychological* testimony the Nevada Supreme Court found constituted expert testimony
     emerged for the first time on direct examination. (*See* Ex. 57 at 7 (describing how
25   Sheldon's testimony was expert in nature); (Ex. 42 (Tr. 79-93).) Petitioner's due process
     claim regarding Sheldon's testimony on bodily fluids without prior notice is the subject of
26   Ground 7 and will not be further discussed here.

27

28                                              5

whether a conviction violated the Constitution, laws, or treaties of the United States."). Petitioner is entitled to relief, if at all, only if the admission of Sheldon's expert testimony or the State's failure to notice Sheldon as an expert "was arbitrary or fundamentally unfair," *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000) (quoting *Colley v. Sumner*, 784 F.2d 984, 990 (9th Cir.1986)), and petitioner was actually prejudiced by the error. *See Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012); *see also Brecht v. Abrahamson*, 507 U.S. 619, 627, 637 (1993). A petitioner suffers actual prejudice if the error had a "substantial and injurious effect or influence on the jury's verdict." *Wood*, 693 F.3d at 1113; *see also Brecht*, 507 U.S. at 627. Under this test, relief is proper only if the federal court has grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. at 2197–98 (internal quotation marks omitted).

Despite concluding, in connection with another claim, that Sheldon did in fact offer expert testimony (Ex. 57 at 7), the Nevada Supreme Court summarily held that petitioner's due process claim was without merit. (Ex. 57 at 3 n.1.) In the context of separate claims, however, the Nevada Supreme Court also held that petitioner had not demonstrated prejudice from Sheldon's testimony or the failure to notice Sheldon as an expert. First, it held that petitioner had failed to show a reasonable probability of a different outcome at trial had Sheldon's expert testimony been excluded because "the child victim testified at trial and provided detailed testimony regarding the sexual activity she was subjected to by appellant." (Ex. 68 at 3-4.) Second, it held that even with Sheldon's expert testimony, petitioner was not entitled to a psychological evaluation. (Ex. 57 at 5-8.)

The Nevada Supreme Court's core finding that petitioner did not suffer actual prejudice, and thus cannot prevail on this due process claim, was not contrary to or an unreasonable application of clearly established U.S. Supreme Court law. As respondents correctly note, petitioner has not identified any Supreme Court case clearly holding that a failure to notice an expert witness violates due process. In his reply, petitioner relies on

*Wardius v. Oregon*, 412 U.S. 470, 472 (1973) to argue that the failure to notice Sheldon violated his due process rights because he was compelled to notice his own expert witness while the State was not. Petitioner's reliance on *Wardius* is unavailing.

In *Wardius*, the Supreme Court held that "the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants." *Wardius*, 412 U.S. at 472. It continued: "It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State." *Id.* at 476. The facts of *Wardius* are distinguishable in that here, there was no statute requiring petitioner to disclose his expert witness while exempting the State from the same requirement. However, even assuming *Wardius* could be extended to this case, petitioner has not demonstrated actual prejudice.

J.R. clearly and articulately testified to the abuse she suffered at petitioner's hands, including with several very specific and vivid examples. (*See, e.g.*, Ex. 42 (Tr. 20 & 37-39).) Additionally, petitioner called his own expert witness whose testimony was essentially responsive to the limited expert testimony offered by Sheldon, which related to techniques and safeguards for interviewing minors. (*See* Ex. 42 (Tr. 79-84, 164-230).) Petitioner has not explained how either his expert's testimony or Sheldon's testimony would have been different enough to impact the proceedings in his favor had Sheldon been noticed as an expert, nor can the Court conceive of how it might have been so. Under these circumstances, the Nevada Supreme Court's conclusion that petitioner was not prejudiced by Sheldon's testimony was not objectively unreasonable.

Likewise, the Nevada Supreme Court concluded petitioner did not satisfy the standard for a psychological examination of J.R., even with Sheldon's expert testimony. Implicitly, this holding supports a conclusion that even if Sheldon had been noticed as an expert, petitioner would not have been entitled to a psychological examination of J.R. at any rate. Thus, petitioner's claim that he would have obtained a psychological

examination of J.R. but for the State's failure to notice Sheldon is without merit. Moreover, as petitioner did in fact call an expert psychological witness who responded to Sheldon's testimony, petitioner's contention that he was precluded from calling his own rebuttal expert is not persuasive. As such, the Nevada Supreme Court's implicit conclusion that petitioner was not prejudiced by the failure to notice Sheldon as a witness was not objectively unreasonable.

Petitioner is not entitled to relief on Ground 1.

**B. Ground 2**

In Ground 2, petitioner asserts that his due process rights were violated when the trial court denied petitioner's second motion to compel a psychological examination of J.R. after failing to give him a fair hearing on the motion. (ECF No. 7 at 5, 74-78.) In rejecting this claim, the Nevada Supreme Court held as follows:

> Romano contends that the district court abused its discretion by denying his motion to compel a psychological examination of J.R. because the district court misapplied the factors from Abbott v. State, 122 Nev. 715, 138 P.3d 462 (2006), for determining whether a defendant is entitled to the psychological examination of a child witness in a sexual assault case. We cannot agree.

> Standard of review

> The decision to grant or deny a defendant's request for a psychological examination of a child victim is reviewed for abuse of discretion. Abbott, 122 Nev. at 723, 138 P.3d at 467.

> Romano was not entitled to a psychological examination of J.R.

> To determine whether to order a psychological examination of a child sexual assault victim, the district court must consider three factors: (1) whether the State called or benefited from a psychological expert, (2) whether the evidence of the offense is supported by little or no corroboration beyond the testimony of the victim, and (3) whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity. Id. at 724, 727-31, 138 P.3d at 468, 470-73.

> The State benefited from psychological experts

> [I]n situations . . . where [an] investigating officer has training in interviewing child sexual assault victims, describes techniques used to determine truthfulness, analyzes the facts of the interview, and/or states whether there was evidence

8

that the victim was coached or biased against the defendant, the investigating officer will be deemed a psychological expert for the purposes of [determining whether the State benefitted from a psychological expert].

Id. at 730, 138 P.3d at 472.

Although the State did not call a psychological expert, . . . Investigator Sheldon testified that he had experience and training in forensic interviews of children. He stated that he had attended several conferences in which he learned techniques for interviewing children, such as asking questions that call for detailed responses. He testified that he had conducted thousands of interviews, and that J.R. answered his questions in greater detail than many of the children he had interviewed.

Thus, the jury heard testimony regarding the techniques and safeguards utilized to ensure a truthful and accurate accounting by the child victim. This testimony went beyond a mere recitation of the facts of the interviews and addressed many of the very issues that Abbott held constitute expert psychological testimony. See Abbott, 122 Nev. at 727-28, 138 P.3d at 470-71. We therefore conclude that, for the purpose of this determination, Officer Norris and Investigator Sheldon testified as psychological expert witnesses, and that the State benefited from their testimony. See id. As discussed below, however, the remaining two Abbott factors strongly weigh against granting Romano's motion for a psychological examination of J.R. Id. at 724, 138 P.3d at 468 ("[W]hether the State utilizes . . . a psychological expert, is merely a factor to be considered" in determining whether the defendant is entitled to a psychological examination of the child victim.).

Evidence of the offense was supported by corroboration beyond the testimony of the victim

Romano's voluntary statement to Detective Roberts was introduced at trial. In his statement, Romano initially denied any touching, but as the interview progressed, he conceded that some innocent touching occurred. In addition to admitting to sleeping in the same bed as J.R., Romano stated that J.R. had grabbed his penis, that he had inadvertently touched J.R.'s vagina with his nose and moustache, that J.R. was sexually curious, and that J.R. would strike sexy poses. He admitted that when J.R. had caught him masturbating, he told her that the semen he ejaculated was "lotion," which coincided with the terminology J.R. used when describing the abuse. In sum, there was substantial evidence corroborating evidence of Romano's offense beyond the testimony of J.R.

There was not a reasonable basis for believing that J.R.'s mental or emotional state may have affected her veracity

Romano contends that [J.R.'s mother] planted the allegations of sexual abuse in J.R.'s mind in order to keep him from obtaining custody of J.R. However, these allegations and speculation do not demonstrate a reasonable basis for believing that J.R.'s mental or emotional state affected her veracity. J.R.'s statements to her mother, Officer Norris, Detective Roberts, and Investigator Sheldon were consistent. She described, in great

detail, her allegations against Romano, and she never recanted. The evidence indicates that J.R.'s mental and emotional states were sound. Moreover, the evidence also showed that Romano had not made any actual attempts to obtain custody, which undermines his claim that [J.R.'s mother] was a vindictive mother who had planted the allegations in J.R.'s mind in order to keep Romano from obtaining custody. We therefore conclude that based upon the second and third <u>Abbott</u> factors, the district court did not abuse its discretion when it determined that Romano failed to show a compelling need for a psychological examination of J.R.

(Ex. 57 at 5-8.)

As respondents correctly point out, petitioner has not identified any clearly established Supreme Court law holding that denial of a psychological examination of an alleged abuse victim violates due process. Thus, the question is whether in this case the denial of a psychological examination of J.R. was fundamentally unfair or arbitrary and, even if it was, whether petitioner suffered actual prejudice. The Court answers both questions in the negative.

In denying the second motion for a psychological examination, the state courts carefully considered whether the State intended to call or would benefit from expert witness testimony, whether J.R.'s allegations were corroborated, and whether there was a reasonable basis for believing that J.R.'s mental or emotional state may have affected her veracity. These factors are intended to balance the defendant's interests against the alleged victim's interests and require the victim to submit to a psychological examination only where there is a compelling reason to do so. Neither the factors nor the state courts' application of them in petitioner's case were arbitrary or fundamentally unfair.

As the Nevada Supreme Court observed, J.R. was consistent and articulate in her accounts. (Ex. 57 at 8.) Moreover, the assertion that J.R.'s mother planted the allegations in J.R.'s head in order to obtain custody of J.R. or to prevent petitioner from obtaining custody is plainly belied by the record. J.R.'s mother testified that before discovering the abuse, she had thought J.R. was better off with petitioner because he had a nice house in a nice neighborhood and could be around for J.R. more than she could. (Ex. 41 (Tr. 159-60).) Petitioner was in fact the one paying all the bills (Ex. 43 (Tr. 93)), which runs

10

counter to any conclusion that J.R.'s mother was attempting to get petitioner out of the picture. And although petitioner claimed that J.R.'s mother threatened to take J.R. away from him when they fought, he himself testified that J.R.'s mother wanted him to have J.R. full time because she was an unfit mother. (*Id.* at 97-98, 137-38.)

Further, petitioner corroborated much of J.R.'s account. Corroboration does not mean that petitioner had to admit his conduct was criminal; it was enough that he admitted many of the predicate facts of J.R.'s allegations – that he may have touched her vagina with his nose or moustache because he often sniffed it to make sure it was clean, that he called his semen lotion, which is the term J.R. used to describe it, that J.R. had seen him masturbating. (Ex. 78 at 60-61, 63-67.)

Because there was little to no reason to question J.R.'s mental or emotional state and there was significant corroboration of her allegations, it was not arbitrary or fundamentally unfair for the state courts to deny petitioner access to a psychological examination of J.R. For the same reason, there is no basis for concluding that such an examination would have changed the outcome of the proceedings. As such, the Nevada Supreme Court's rejection of petitioner's due process claim was not objectively unreasonable.

To the extent petitioner argues that he was denied a fair hearing on his motion to compel a psychological examination, this claim is plainly without merit. The trial court conducted a hearing and entertained arguments on the issue, giving petitioner's counsel a full and fair opportunity to argue the relevant factors.

Finally, although petitioner asserts a claim of equal protection in Ground 2, there are no allegations anywhere supporting such a claim.

Accordingly, petitioner has not established an entitlement to relief on Ground 2 of the petition.

11

## C. Ground 4

In Ground 4, petitioner asserts that his rights against self-incrimination, to equal protection and to due process were violated because he was not given any *Miranda* warnings before or during his interrogation. (ECF No. 7 at 9, 85-91.) Petitioner bases his claim on the fact that the State has never produced written or audio proof that he was given his *Miranda* warnings and has relied instead only on the testimony of Sergeant Roberts that he Mirandized petitioner when he arrested him at his home. (*Id.*) Petitioner further argues that even if he was Mirandized when he was arrested, the warnings were never re-administered once they arrived at the station, before the interrogation began, or during the interrogation. (*Id.*) He argues that the warnings should have been re-administered given the long lapse of time between his arrest and the start of the interrogation, combined with the fact that he was on a sedative at the time.[3] (*Id.*)

To the extent petitioner claims that Roberts never gave him any *Miranda* warnings, that claim has not been exhausted in state court. This Court nevertheless denies it as plainly meritless because Roberts testified at trial that he read petitioner his *Miranda* warnings upon his arrest, and petitioner offered no evidence to rebut Roberts' testimony. (*See* Ex. 42 (Tr. 237-40); Ex. 43 (Tr. 45-46); *see also* Ex. 57 at 3.)

As to petitioner's argument that he should have been re-administered his warnings after arriving at the police station, the Nevada Supreme Court held:

> Romano knowingly and intelligently waived his Miranda rights
>
> Romano asserts that the district court should not have admitted his statement to the police because he did not knowingly and intelligently waive his rights afforded by Miranda v. Arizona, 384 U.S. 436 (1966).
>
> Standard of review

---

[3]To the extent Ground 4 contains any arguments regarding the knowing and voluntary nature of petitioner's waiver due to the effect of the sedative, those arguments are duplicative of the claims in Ground 5 and will not be further discussed here.

Whether a waiver of <u>Miranda</u> rights is knowing and intelligent is a question of fact and is reviewed for clear error. <u>Mendoza v. State</u>, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006).

<u>Romano's waiver was effective</u>

A defendant's statements made during a custodial interrogation may be admitted at trial only after Miranda warnings have been administered and validly waived. <u>Koger v. State</u>, 117 Nev. 138, 141, 17 P.3d 428, 430 (2001). A valid waiver of <u>Miranda</u> rights must be knowing and intelligent. <u>Miranda</u>, 384 U.S. at 444. We examine the totality of the circumstances to determine whether a defendant's waiver was knowing and intelligent. <u>Mendoza</u>, 122 Nev. at 276-77, 130 P.3d at 181-82.

Although Romano claims that a sedative he had taken prior to the interview impaired his judgment, the record demonstrates that the sedative did not affect his ability to understand his waiver. <u>See</u> <u>Stewart v. State</u>, 92 Nev. 168, 170-71, 547 P.2d 320, 321 (1976) ("Intoxication without more will not preclude the admission of incriminating statements unless it is shown that the defendant was so intoxicated that he was unable to understand the meaning of his statements."). Detective Roberts fully informed Romano of his rights when he arrested him. Romano acknowledged that he understood his rights and agreed to speak with Detective Roberts. In Romano's interview, he did not just give "yes" or "no" answers; he gave lengthy and articulate responses that demonstrated he was fully cognizant of what he was doing and saying. Indeed, Romano's answers described himself as a good father and [J.R.'s mother] as a terrible mother. Additionally, Romano recalled specific events that occurred months before the interview.

. . . .

Romano is an adult. He is also an intelligent individual, having started a lucrative limousine service. The mere fact that there was a 45-minute lapse of time between the time Detective Roberts read Romano his rights and the time Romano gave his statement does not render Romano's statement involuntary. <u>See</u> <u>Koger</u>, 117 Nev. at 144, 17 P.3d at 433 (rejecting defendant's claim that her waiver of <u>Miranda</u> rights was not voluntary despite the fact that 12 days passed between her <u>Miranda</u> warnings and her interrogation). . . . The interview was conducted between 8 a.m. and 10 a.m., and there is no showing that Romano was deprived of sleep or food. The record indicates that Detective Roberts offered Romano water and attempted to make him as comfortable as possible.

(Ex. 57 at 3-5.) In sum, the Nevada Supreme Court concluded that the *Miranda* warnings did not have to be re-administered because only a short period of time elapsed between the warnings and the start of the interrogation and because petitioner's conduct during the interrogation indicated that he was not impaired and understood what was going on. The Court cannot find this conclusion to be objectively unreasonable.

13

There is no *per se* constitutional requirement that *Miranda* warnings be reissued after a period of time. Rather, whether initial warnings remain valid depends on the totality of the circumstances. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th Cir. 2005). Roughly 45 minutes elapsed between the warnings and the beginning of petitioner's interrogation, during which time petitioner was in custody. (Ex. 54 at 25; Ex. 42 (Tr. 240).) This is not an exceptionally lengthy period of time and is considerably less than time periods found acceptable by the Ninth Circuit. *See Rodriguez-Preciado*, 399 F.3d at 1128. That petitioner was allegedly under the influence of a sedative does not change this result. Petitioner's interview makes clear that he understood the questions he was being asked and could respond to them in often nuanced ways, controverting his contention that the sedative rendered him half-awake, half-asleep and unable to understand the rights he was waiving. (*See* Ex. 78.) Accordingly, the Nevada Supreme Court's conclusion that, under the totality of the circumstances, petitioner's *Miranda* warning continued to be valid throughout his interrogation was not objectively unreasonable.

Finally, nothing in Ground 4 supports a claim of an equal protection violation.

Petitioner is not entitled to relief on Ground 4.

**D. Ground 5**

In Ground 5, petitioner asserts that his rights against self-incrimination and to due process and equal protection were violated because the statements he made during his interrogation were not voluntary due to the effect of Ambien, the sedative which he had taken at some point prior to his arrest.[4] (ECF No. 7 at 11, 97-99.) The Nevada Supreme Court rejected petitioner's claim as follows:

Romano's statement to police was voluntary

---

[4]To the extent petitioner argues in Ground 5 that he was not aware of his rights because he had not been given his *Miranda* warnings or was not re-issued his warnings during the interrogation, that claim is disposed of in Ground 4.

14

Romano asserts that the district court should not have admitted his statement to the police because it was not voluntary.

Standard of review

We review de novo whether a custodial statement is voluntary. Rosky v. State, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005).

Romano's statement was voluntary

"A confession is admissible only if it is made freely and voluntarily, without compulsion or inducement." Passama v. State, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987). We examine the totality of the circumstances to determine whether the defendant's will was overborne when he confessed. Mendoza, 122 Nev. at 276, 130 P.3d at 181-82. Factors relevant to voluntariness include: "[t]he youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." Dewey v. State, 123 Nev. 483, 492, 169 P.3 1149, 1155 (2007) (internal quotations omitted).

Romano is an adult. He is also an intelligent individual, having started a lucrative limousine service. The mere fact that there was a 45-minute lapse of time between the time Detective Roberts read Romano his rights and the time Romano gave his statement does not render Romano's statement involuntary. See Koger, 117 Nev. at 144, 17 P.3d at 433 (rejecting defendant's claim that her waiver of Miranda rights was not voluntary despite the fact that 12 days passed between her Miranda warnings and her interrogation). Romano's detention and interview was not unreasonably lengthy. Detective Roberts did not make any threats, use physical force, or make promises to Romano in exchange for his statement. Although Detective Roberts expressed sympathy and minimized the seriousness of the charges against Romano, these techniques are permissible. See Sheriff v. Bessey, 112 Nev. 322, 328, 914 P.2d 618, 622 (1996) ("[I]nterrogation techniques such as offering false sympathy, blaming the victim, minimizing the seriousness of the charge, using a good-cop/bad-cop routine, or suggesting that there is sufficient evidence when there is not" are permissible techniques so long as they do not "produce inherently unreliable statements or revolt our sense of justice."). The interview was conducted between 8 a.m. and 10 a.m., and there is no showing that Romano was deprived of sleep or food. The record indicates that Detective Roberts offered Romano water and attempted to make him as comfortable as possible. We conclude that the totality of the circumstances demonstrate that Romano's statement was voluntary, and thus the district court properly admitted his statement.

(Ex. 57 at 2-5.)

Respondents argue that petitioner has not shown by clear and convincing evidence that the state courts were unreasonable in determining that his waiver was voluntary. As previously discussed, petitioner's interview with Roberts was lucid and

nuanced. (*See supra* at Sect. IV(C).) The fact that Ambien has certain side effects does not mean that petitioner was necessarily suffering from them at the time of his interrogation, which occurred at about 9:00 a.m. (Ex. 78 at 1.) Absent other compelling evidence that petitioner was unable to understand what was going on, the Nevada Supreme Court was not unreasonable in concluding that petitioner was able to and in fact did knowingly and voluntarily waive his *Miranda* rights.

Finally, nothing in Ground 5 supports a claim of an equal protection violation.

Petitioner has not established that he is entitled to relief on Ground 5.

**E. Ground 7**

In Ground 7, petitioner asserts that he was denied his right to due process when Sheldon testified as an expert on the temperature of bodily fluids without prior notice. (ECF No. 7 at 15, 110-12.)

The Nevada Supreme Court summarily denied this claim on the merits. (Ex. 57 at 2 n.1.) Because the decision is not explained, the Court must "perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable." *Pinholster v. Ayers*, 590 F.3d 651, 663 (9th Cir. 2009) (en banc) (internal quotation marks and citation omitted), *reversed on other grounds sub nom., Cullen*, 563 U.S. 170. The Court "must determine what arguments or theories could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.*

Sheldon's comments with regard to the temperature of semen were elicited for the first time in response to questions posed by defense counsel on cross-examination. (*See* Ex. 42 (Tr. 112 et seq.).) In attempting to discredit J.R.'s description of petitioner's semen on her stomach as "freezing" cold, defense counsel engaged in the following questioning of Sheldon:

16

Q     . . . [W]e can agree, you and I, that semen when it comes out of somebody's penis is not cold.

A     Unless, of course, it was winter or something.

Q     Okay. Well –

A     I'm not saying that semen would necessarily be cool. I'm talking about the contrast between the skin and the semen –

Q     Okay.

A     -- might certainly give her that impression.

Q     I'm not – well, I'm not aware of any experiments to back that up, but semen's body temperature, isn't it?

A     Well, certainly.

(Ex. 42 (Tr. 112-13).) On redirect, the State asked the following questions:

Q     Just with respect to the temperature of the semen, semen would be body temperature?

A     Yes, certainly.

Q     Initially when it came out?

A     Yes.

Q     Would you agree, or what temperature would it be after it remained on the stomach of a child who was uncovered laying in the middle of the bed say in an air-conditioned room or a fan blowing on her?

    [Defense counsel]    Objection. Lack of foundation.

    THE COURT:       Sustained.

Q     Would semen remain body temperature?

A     Okay. Certainly – no, it would not.

Q     And have you ever gotten out of a pool with your body all wet?

A     Certainly.

Q     Without a towel?

A     And it was cold as a son of a gun.

(Ex. 42 (Tr. 138).)

17

As is evident, to the extent the State asked any questions about the temperature of semen, it was only in response to the questions posed by defense counsel. Under the circumstances of this case, the State could not have anticipated a need for expert testimony in this area and its failure to therefore notice Sheldon as an expert, even if what he provided was expert testimony, could hardly be considered fundamentally unfair or arbitrary. Moreover, the Nevada Supreme Court never found Sheldon testified as an expert with respect to bodily fluids, and the Court is not persuaded that his testimony in this regard was expert in nature. Even if it was, however, petitioner has not demonstrated actual prejudice. The Nevada Supreme Court held that:

> While the majority of these witnesses' testimonies related to their personal conduct in investigating this matter, to the extent that their testimony could be characterized as providing specialized knowledge, appellant fails to demonstrate that the State would not have been permitted to present such testimony. *See Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1259-60 (2005) (discussing the range of possible remedies for failure to make appropriate expert witness disclosures).

(Ex. 68 at 3.) With respect to any claim that the failure to notice Sheldon as an expert prejudiced petitioner because he was not able to hire a rebuttal expert, the Nevada Supreme Court held that petitioner did "not demonstrate that there were any experts in these areas which would have testified in a manner favorable to his defense or that there was a reasonable probability of a different outcome at trial had counsel presented any favorable expert testimony in these areas." (*Id.* at 5.) Neither of these conclusions is objectively unreasonable.

Petitioner additionally asserts that Sheldon created facts for evidence when he stated that semen would remain cold in a room with a fan or air conditioning blowing. (ECF No. 7 at 112; Ex. 42 (Tr. 138).) This claim is clearly belied by the record, as that question and Sheldon's response were objected to and the objection sustained. (Ex. 42 (Tr. 138).)

Petitioner has not demonstrated an entitlement to relief on Ground 7 of the petition.

18

**F. Grounds 9 and 10**

In Ground 9, petitioner asserts that his rights to due process, equal protection, and confrontation were violated by the introduction of inadmissible hearsay testimony and vouching statements during petitioner's custodial interrogation, the audio of which was played at trial. Petitioner claims that admission of J.R.'s statements violated his rights because they had already been introduced twice before and so the jury heard her story multiple times over. (ECF No. 7 at 19, 116; ECF No. 7-1 at 1-4.) Ground 10 makes the same allegations but additionally alleges that introduction of the interrogation violated state evidentiary laws. (ECF No. 7 at 21; ECF No. 7-1 at 5-8.) The Court considers the claims together.

The Nevada Supreme Court held that J.R.'s statements were not hearsay as they were properly admissible pursuant to NRS § 51.385(1). (Ex. 57 at 9.) Whether the state courts correctly found that J.R.'s statements were admissible under state law is a determination that cannot be reviewed by this Court. *Estelle*, 502 U.S. at 68. A state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it is so fundamentally unfair as to violate due process. *See Dillard v. Roe*, 244 F.3d 758, 766 (9th Cir. 2001); *see also Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998) (The federal court's "role is limited to determining whether the admission of evidence rendered the trial so fundamentally unfair as to violate due process."). Habeas relief is thus available only if an evidentiary ruling or rule was arbitrary, disproportionate to the end it was asserted to promote, or so prejudicial that it rendered the trial fundamentally unfair. *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir.1995).

Petitioner has not identified any clearly established U.S. Supreme Court law holding that the introduction of victim hearsay statements violates due process, even

19

repetitive introduction, particularly where the victim actually testified at trial.[5] Thus, the question is whether the introduction of J.R.'s statements was fundamentally unfair or arbitrary in this case or, even if it was, whether it caused petitioner actual prejudice.

J.R.'s statements were, under state law, admissible hearsay. Further, they were necessary to give context to Petitioner's clearly admissible statements made during his interrogation. They thus served a legitimate purpose and their introduction—even if repetitive of earlier testimony and evidence—cannot be said to be fundamentally unfair or arbitrary. But even if the introduction of this admissible hearsay could be considered fundamentally unfair, it was merely duplicative of other evidence properly presented to the jury and cannot be said to have caused petitioner actual prejudice. *See Apanovitch v. Houk*, 466 F.3d 460, 487-88 (6th Cir. 2006). The Nevada Supreme Court's rejection of this claim was thus not objectively unreasonable.

As to petitioner's vouching claim, the Nevada Supreme Court summarily denied the claim on its merits. (Ex. 57 at 2 n.1.) However, in addressing petitioner's related ineffective assistance of counsel claim, the Nevada Supreme Court held:

> Appellant does not cite to any statements that contained improper vouching for the credibility of the victim and the record does not reveal that any such vouching occurred. *See Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004). Appellant's claim is a bare claim, which is insufficient to demonstrate that he is entitled to relief. *See Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225. Moreover, this court concluded on direct appeal that the State's witnesses did not vouch for the credibility of the victim, and accordingly, appellant fails to demonstrate any prejudice related to this claim. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011).

(Ex. 68 at 4.)

In claiming that that Roberts vouched for J.R. by saying he believed her and that he thought petitioner was lying, petitioner ignores the overall context of the interrogation. Though Roberts did state these things, he also repeatedly told petitioner he did not think

---

[5]None of the cases cited by petitioner supports a finding of due process violation in this case.

he was lying, that though he believed J.R. he was hoping that petitioner could provide him an innocent explanation of her claims and that he did not believe petitioner was a monster or child rapist. (*See* Ex. 78 at 40-84.) Further, Roberts testified before the jury that much of his questioning was a ruse, that it was for the jury to decide who to believe, and that petitioner may have been telling the truth; it is thus unlikely that the jury took what Roberts said in the interrogation as a statement of his actual beliefs. (*See* Ex. 43 (Tr. 31-35).) In this context, nothing Roberts said during petitioner's interrogation can be considered vouching in its typical sense, and the Nevada Supreme Court's finding that Roberts did not vouch for J.R. was not objectively unreasonable.

As to the confrontation claim, the Nevada Supreme Court held that introduction of J.R.'s statements did not violate the Confrontation Clause because J.R. testified at trial and petitioner therefore had an opportunity to confront and cross-examine her. (Ex. 57 at 10 n.2.) The Confrontation Clause is not violated where the witness who made the statements appears at trial. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). Thus, the Nevada Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law.

Finally, nothing in either Ground 9 or Ground 10 supports a claim of an equal protection violation.

Accordingly, petitioner has not established entitlement to relief on either Ground 9 or Ground 10 of the petition.

**G. Ground 11**

In Ground 11, petitioner asserts that his rights to a fair trial and due process were violated when the court allowed introduction of evidence that he was featured on the television show "America's Most Wanted"—specifically one reference during opening statements and two references during testimony. (ECF No. 7 at 23; ECF No. 7-1 at 9-12.)

In her opening statement, the prosecutor explained that petitioner had fled before his first trial and then stated: "You'll hear that finally last year having previously been on

21

America's Most Wanted and whatnot, the defendant was found living under another name and arrested in Florida and brought back to face the charges." (Ex. 41 (Tr. 129).) Later, the officer who arrested petitioner in Florida made two references to petitioner being on "America's Most Wanted." (Ex. 42 (Tr. 159 & 161).) Specifically, Frank Cohens testified that his office had received an anonymous tip of a wanted fugitive in Key West. (Ex. 42 (Tr. 159).) When asked whether he knew of any other information at the time, Cohens replied that he knew only about the tip and that the fugitive had been on "America's Most Wanted." (*Id.*) Cohens then explained that when he found petitioner, petitioner said his name was "Russo," but that Cohens knew he was petitioner because he "had the picture from America's Most Wanted with" him. (*Id.* at 160-61.)

The Nevada Supreme Court rejected petitioner's claim as follows:

The district court did not commit plain error by admitting evidence that Romano was featured on "America's Most Wanted"

Romano argues that the district court erred by admitting evidence that he was featured on the television show, "America's Most Wanted" because it was unfairly prejudicial.

Standard of review

Because Romano did not object to the introduction of this evidence at trial, we review for plain error. Green v. State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). An error is plain if it affects the defendant's substantial rights. Id.

Evidence that Romano was featured on "America's Most Wanted" was unfairly prejudicial but does not amount to plain error

"All relevant evidence is admissible." NRS 48.025(1). "'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." NRS 48.035(1).

Romano was apprehended based on an anonymous tip police received after he was featured on "America's Most Wanted." Arguably, the underlying basis of Romano's capture was relevant to explain the course of the police's investigation and apprehension of Romano in Florida. This marginal probative value, however, is substantially outweighed by the danger that the jury might conclude that Romano was not just a fugitive, but was a member of the group of the worst of the worst fugitives that are

22

typically featured on the show. See U.S. v. Baker, 432 F.3d 1189, 1219 (11th Cir. 2005) (testimony that defendant had been featured on "America's Most Wanted" had "virtually no probative value" yet was "unfairly prejudicial [by] essentially telling the jurors to believe that [the defendant] is guilty of the charged offenses because he appeared on [a] well-known television program[] featuring individuals that police consider responsible for committing crimes"). We therefore conclude that evidence that Romano had been featured on "America's Most Wanted" was unfairly prejudicial and should not have been admitted by the district court.

Nonetheless, given the substantial evidence of Romano's flight, the jury would have learned Romano was a fugitive even without introduction of evidence that Romano was featured on "America's Most Wanted." Romano testified that he changed his name because he knew he was a fugitive and he did not want to be discovered on the Internet. Thus, the jury would have learned that Romano was a fugitive and that he believed he was wanted for a crime sufficiently heinous that he could be located on the Internet. See Carr v. State, 689 So. 2d 283, 286 (Fla. Dist. Ct. Ap. 1996) (holding that although it was error to allow the jury to learn that the defendant had been featured on "America's Most Wanted," the error was harmless because the jury already knew that she had been a fugitive).

In addition, "America's Most Wanted" was only mentioned twice during the entire trial. First, the State commented in its opening statement that "[y]ou'll hear that finally last year having previously been on America's Most Wanted and whatnot, the defendant was found living under another name and arrested in Florida and brought back to face the charges." Next, Key West Detective Franklin Cohens testified that he received an anonymous tip for a wanted fugitive that had been featured on the show and that he used a picture from the show to identify Romano. Romano has failed to demonstrate how these passing references affected his substantial rights. See Ford v. Curtis, 277 F.3d 806, 811 (6th Cir. 2002) (concluding that although "references to the F.B.I.'s Ten Most Wanted List and to 'America's Most Wanted' were of nominal relevance and prejudicial," the error did not warrant reversal because the improper evidence was not "so overwhelming that it substantially affected the jury's verdict"). We therefore conclude that, although the district court committed error in admitting evidence that Romano was featured on "America's Most Wanted," the error was not plain and did not affect Romano's substantial rights to warrant reversal.

(Ex. 57 at 10-12.) In short, the Nevada Supreme Court held that the references to "America's Most Wanted" were unfairly prejudicial but that the error did not have a substantial and injurious effect on the jury's verdict. The Nevada Supreme Court's finding was not objectively unreasonable.

Petitioner is entitled to relief only if the references to "America's Most Wanted" caused him actual prejudice. See Wood, 693 F.3d at 1113; see also Brecht, 507 U.S. at

23

627, 637. A petitioner suffers actual prejudice if the error had a "substantial and injurious effect or influence on the jury's verdict." *Wood*, 693 F.3d at 1113; *see also Brecht*, 507 U.S. at 627, 637. As noted, under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict." *Davis*, 135 S. Ct. at 2197–98.

In total, the jury heard three references to "America's Most Wanted." In a closer case, prejudicial comments such as these could certainly have had a substantial and injurious effect on the jury's verdict. Being featured on "America's Most Wanted" could suggest to some jurors that petitioner had been prejudged guilty, contrary to the presumption of innocence. However, in this case where J.R. testified at great length and with specific, vivid examples of the abuse she suffered at petitioner's hands and where petitioner's own words corroborated portions of her account, the Court does not have "grave doubt" about whether the passing references to "America's Most Wanted" had a substantial and injurious effect on the jury's verdict. The jury had plenty of evidence before it to adjudge petitioner guilty, and the Court is not convinced that the references to "America's Most Wanted" caused the jury to convict petitioner where it might otherwise have voted to acquit. Accordingly, the Nevada Supreme Court's rejection of petitioner's due process and fair trial claim was not contrary to, or an unreasonable application of, clearly established U.S. Supreme Court law.

Petitioner is not entitled to relief on Ground 11.

**H. Ground 14**

In Ground 14, petitioner asserts that his rights to a fair trial, due process, and equal protection were violated by two jury instructions that referred to J.R. as a "victim." (ECF No. 7 at 29; ECF No. 7-1 at 22-26.) The Nevada Supreme Court summarily denied this claim on the merits. (Ex. 57 at 2 n.1.) The Court does not find this decision to be objectively unreasonable.

To obtain federal habeas relief based on an improper jury instruction, petitioner must establish that the instruction so infected the entire trial that the resulting conviction violates due process. *See Masoner v. Thurman*, 996 F.2d 1003, 1006 (9th Cir.1993); *Estelle*, 502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The question is whether the instructional "error, in the whole context of the particular case, had a substantial and injurious effect on the jury's verdict." *Calderon v. Coleman*, 525 US. 141, 147 (1998). In reviewing jury instructions, the Court inquires as to whether the instructions as a whole were misleading or inadequate to guide the jury's deliberation. *See United States v. Garcia–Rivera*, 353 F.3d 788, 791 (9th Cir. 2003) (citing *United States v. Frega*, 179 F.3d 793, 806 n. 16 (9th Cir.1999) (internal citations omitted). "'[A] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378 (1990). "[N]ot every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).

Petitioner focuses on two instructions, Numbers 9 and 10. Instruction No. 9 read: "Where a child has been the victim of a sexual assault or lewdness with a minor, and does not remember the exact date of the act the State is not required to prove a specific date, but may prove a time frame within which the act took place." (ECF No. 7-1 at 27.) Instruction No. 10 read: "There is no requirement that the testimony of a victim of sexual assault or lewdness be corroborated, and his/her testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty." (*Id.* at 28.)

Petitioner has identified no clearly established federal law barring the use of the word victim in jury instructions, and this very claim has previously been rejected by another court in this district. *See Aviles-Perez v. LeGrand*, No. 3:13-cv-00173-RCJ, 2015 WL 5056897, at *20 (D. Nev. Aug. 25, 2015), *aff'd*, 669 F. App'x 916 (9th Cir. 2016). The Court agrees with *Aviles-Perez*. Moreover, neither instruction refers to J.R. specifically as a victim.  Even assuming that the use of the word victim in instructions might in some

25

cases be considered improper, in the context of these jury instructions as a whole, some of which did refer to J.R. specifically by name, the two nonspecific uses of the word victim in the instructions did not render the trial fundamentally unfair. (*See* Ex. 79 at 4-7.)

Petitioner additionally argues that he was deprived of meaningful review of the instructions before they were submitted to the jury. This claim is unexhausted but is denied at any rate as plainly meritless, as the trial court reviewed the instructions with the attorneys before giving them to the jury and allowed for argument and objections. (*See* Ex. 43 (Tr. 159-72).)

Petitioner also alleges that his due process rights were violated by Detective Roberts' repeated references to J.R. as "the victim," in both his testimony and his written notes that were admitted into the trial.

Even assuming the State's use of the word "victim" could be considered improper, here the use of the word victim during trial testimony was rather isolated and Roberts' notes were clearly made during the course of a police investigation in which J.R. was the presumed victim. (*See* Ex. 42 (Tr. 231 *et seq.*); Ex. 43 (Tr. 30-59); Ex. 56 at 40.) In light of J.R.'s articulate and vivid testimony and petitioner's partial corroboration of her account, the Nevada Supreme Court would have been objectively reasonable in concluding that these references did not cause petitioner actual prejudice.

Finally, no allegations in Ground 14 support an equal protection claim.

Petitioner therefore has not established an entitlement to relief on Ground 14.

**I. Ground 16**

In Ground 16, petitioner asserts that his rights to a fair trial, due process, and equal protection were violated when the jury was not instructed on the mandatory minimum sentences he faced if convicted. (ECF No. 7 at 33; ECF No. 7-1 at 32-37.) The Nevada Supreme Court summarily denied this claim on the merits. (Ex. 57 at 2 n.1.)

As an initial matter, no allegations in Ground 16 support a claim of equal protection violation. Additionally, to the extent petitioner asserts that state law required the jury be

1   informed of the mandatory minimum sentence he faced, as discussed above, such is not

2   a cognizable claim in this action.

3       As to the due process claim, petitioner has identified no clearly established federal

4   law holding that a jury must be informed of the sentence to which a petitioner will be

5   exposed if convicted. Furthermore, even if the failure to inform the jury of this information

6   could be considered fundamentally unfair, the Court is not persuaded that the jury would

7   have voted to acquit the petitioner had it known he faced life in prison. It is not reasonably

8   likely that the jury would have excused petitioner's crimes if only it had known that he

9   faced life sentences for them. Accordingly, the Nevada Supreme Court's rejection of his

10  claim was not objectively unreasonable.

11      Petitioner is not entitled to relief on Ground 16.

12  **J. Ground 17**

13      In Ground 17, petitioner asserts that his rights to a fair trial, due process, and equal

14  protection were violated when he was denied meaningful review of his cumulative error

15  claim on direct appeal. (ECF No 7 at 35; ECF No. 7-1 at 38-39.) In rejecting petitioner's

16  claim of cumulative error, the Nevada Supreme Court held:

17          Romano contends that cumulative error warrants reversal of his
            convictions. We disagree.
18
19          In addressing a claim of cumulative error, we consider: "(1) whether
        the issue of guilt is close, (2) the quantity and character of error, and (3) the
20      gravity of the crime charged." Mulder v. State, 116 Nev. 15, 17, 992 P.2d
        845, 854-55 (2000). Here, although Romano was charged with serious
21      crimes, the question of guilt is not close and the two passing references at
        trial to "America's Most Wanted" do not amount to cumulative error. Thus,
22      we conclude that cumulative error does not warrant reversal.

23  (Ex. 57 at 14.)

24      Initially, nothing in Ground 17 states a claim of an equal protection violation.

25  Additionally, to the extent petitioner asserts that he was denied meaningful review of this

26  claim, petitioner has not exhausted such a claim with the state courts, but it will

27  nonetheless be denied as plainly meritless. The Nevada Supreme Court addressed the

28
                                        27

cumulative error claim and considered whether the cumulative effect of the only error it found—the passing references to "America's Most Wanted"—were sufficient to warrant reversal of the conviction.

As to the cumulative error claim itself, the Nevada Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law. Cumulative error warrants relief only where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). That is, "where the combined effect of individually harmless errors renders a criminal defense 'far less persuasive than it might [otherwise] have been,' the resulting conviction violates due process." *Parle v. Runnels*, 505 F.3d 922, 927–28 (9th Cir. 2007) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973)). In evaluating this claim, the Court must consider "the overall strength of the prosecution's case "because 'a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.'" *Id.* at 928 (quoting *Strickland v. Washington*, 466 U.S. 668, 696 (1984)). "If the evidence of guilt is otherwise overwhelming, the errors are considered 'harmless' and the conviction will generally be affirmed." *Id.*

Petitioner identifies the following errors that should be cumulated: (1) the State's failure to notice expert witnesses; (2) the denial of a psychological examination of J.R.; (3) the admission of J.R.'s hearsay statements and Roberts' statements vouching for J.R.; (4) the introduction of flight evidence; (5) introduction of evidence that petitioner was on "America's Most Wanted"; and (6) the giving of a flight jury instruction.[6] (ECF No. 7-1 at 38-39.)

---

[6]The Court has consolidated petitioner's claims of error, which are somewhat repetitive.

28

The expert testimony provided by Sheldon was minimal and was effectively responded to by petitioner's own expert. There is nothing in the record to suggest that a psychological examination of J.R. would have been favorable to petitioner.[7] The passing references to "America's Most Wanted," the flight evidence, and the flight instruction do not appear to have had an overly prejudicial effect on the trial in light of the undisputed fact that petitioner had fled and J.R.'s very clear, articulate and vivid testimony on the stand. Finally, there was no vouching for J.R. during Roberts' interrogation of petitioner and even if the repetition of J.R.'s allegations during trial was error, in the overall context of trial the Court cannot conclude that it had a substantial and injurious effect on the jury's verdict.

Petitioner has not established entitlement to relief on Ground 17 of the petition.

**K. Ground 18**

In Ground 18, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated when trial counsel did not challenge the failure to notice Sheldon and Norris as expert witnesses. (ECF No. 7 at 37; ECF No. 7-1 at 40-42.) The Nevada Supreme Court rejected this claim as follows:

> Third, appellant argues that his trial counsel was ineffective for failing to assert that two of the State's witnesses were not properly noticed pursuant to NRS 174.234(2), as they testified as experts in psychology or bodily fluids. . . . While the majority of these witnesses' testimonies related to their personal conduct in investigating this matter, to the extent that their testimony could be characterized as providing specialized knowledge, appellant fails to demonstrate that the State would not have been permitted to present such testimony. *See Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1259-60 (2005) (discussing the range of possible remedies for failure to make appropriate expert witness disclosures). Moreover, as the child victim testified at trial and provided detailed testimony regarding the sexual activity she was subjected to by appellant, appellant fails to demonstrate a reasonable probability of a different outcome at trial had the district court refused to permit the two challenged witnesses to testify or limited their testimony to the facts that they observed.

---

[7]J.R's initial interview with Sheldon and Roberts strongly supports such a conclusion. (*See* Ex. 77.)

29

(Ex. 68 at 3-4.) The Nevada Supreme Court's decision was not contrary to, or an unreasonable application of, clearly established federal law.

Ineffective assistance of counsel claims are governed by *Strickland*, 466 U.S. 668. Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief—deficient performance by counsel and prejudice. *See* 466 U.S. at 687. With respect to the performance prong, a petitioner must carry the burden of demonstrating that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688. "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citation omitted). In assessing prejudice, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Id.* at 696.

The Nevada Supreme Court found that petitioner failed to demonstrate prejudice because he had not shown the testimony would have been excluded or that, even if it were, the outcome of the proceedings would have been any different. Under Nevada law, several remedies are available for undisclosed expert testimony: (1) excluding the testimony; (2) allowing the defense discovery or inspection of materials not previously disclosed; (3) granting a continuance; (4) or any "other order as [the court] deems just under the circumstances." *Sampson v. State*, 122 P.3d 1255, 1259–60 (Nev. 2005) (citing NRS § 174.234(1)(a)). Given that Sheldon and Norris proffered only limited expert testimony and petitioner had his own expert who essentially responded to them, it is not reasonably likely the testimony would have been excluded entirely if counsel had objected. Even if the testimony had been excluded, it is not reasonably likely that the outcome of the proceedings would have been different in light of J.R.'s compelling testimony and petitioner's own admissions.

Petitioner asserts that he was prejudiced because he was unable to get a psychological examination or properly examine the expert witnesses. However, the first time reasonably competent counsel could have objected to the unnoticed expert testimony would have been when it began, at trial. By that point, petitioner had already been denied a psychological examination, so he cannot show prejudice from this failure. Even if the trial court had granted a continuance and petitioner had been given an additional opportunity to argue for an examination, the Nevada Supreme Courts' rulings make abundantly clear that he was never going to get one. As to whether petitioner was prejudiced because counsel did not have enough time to properly prepare his cross-examination of Sheldon and Norris, petitioner's allegation is conclusory and unsupported.

Thus, the Nevada Supreme Court's rejection of this claim was not objectively unreasonable.

Petitioner is not entitled to relief on Ground 18.

**L. Ground 19**

In Ground 19, petitioner asserts that his right to effective assistance of counsel was violated with respect to the second motion to compel psychological examination. Specifically, petitioner asserts that at the hearing on the motion, counsel should have objected when the State said it was not calling any expert witnesses and should have demanded that the trial court issue an order limiting all witness testimony to only the facts of the investigation. (ECF No. 7 at 39; ECF No. 7-1 at 43-46.)

The Nevada Supreme Court decided this claim as follows:

> Second, appellant argues that his trial counsel was ineffective for failing to file a pretrial petition for a writ of mandamus in this court or filing a second motion in the district, both regarding a request for a psychological evaluation of the victim. . . .  Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Counsel filed a motion to compel a psychological examination of the child victim and the district court denied that motion. This court concluded on direct appeal that the district court properly denied the motion and this court properly examined that claim under the abuse-of-discretion standard of review. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011); *see also Abbott v. State*, 122 Nev. 715, 723, 138 P.3d 462, 467 (2006).

> Appellant fails to demonstrate a reasonable probability of a different
> outcome at trial had counsel made repeated attempts to challenge this issue
> . . . .

(Ex. 68 at 3-4.) The Nevada Supreme Court's conclusion that counsel was not deficient and petitioner was not prejudiced was not objectively unreasonable.

Counsel filed a motion to compel psychological examination and he argued for it vigorously at a hearing. (*See* Ex. 38 (Tr. 17-47); Ex. 72.) It must be noted that counsel faced an uphill battle in obtaining the court's authorization for such an examination—the Nevada Supreme Court had already decided, in petitioner's case, that he was not entitled to an exam. While an intervening decision—*Abbott v.* State, 138 P.3d 162 (Nev. 2006)— somewhat changed the standard for evaluating such motions, the new decision did not compel a different result in petitioner's case, as is evident from the Nevada Supreme Court's finding that petitioner was not entitled to an examination even under the new standard. Still, counsel made the best arguments he could, including that witnesses the State was going to call would, at some point, have "to testify as an expert in their field regarding behavioral matters and/or responses associated with victims of child sex abuse" and asking the court to limit the witnesses' testimony to facts of the investigation if no psychological exam was going to be granted. (Ex. 72 at 3-4.) How much more could have been expected of reasonably competent counsel is difficult to assess. It is apparent to this Court that counsel's arguments fell within the wide range of reasonable representation. Accordingly, the Nevada Supreme Court's rejection of this claim was objectively reasonable.

Petitioner is not entitled to relief on Ground 19.

///

///

///

///

///

32

### M. Ground 20

In Ground 20, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because trial counsel failed to object to Norris' and Sheldon's expert testimonies.[8] (ECF No. 7 at 41; ECF No. 7-1 at 47-50.)

The Nevada Supreme Court rejected petitioner's ineffective assistance of counsel claim as follows:

> Appellant also argues that as these witnesses were not properly noticed as experts, counsel should have objected to the State's representation that it would not present expert testimony and then sought to limit these witnesses' testimony to a recitation of the facts that they observed. While the majority of these witnesses' testimonies related to their personal conduct in investigating this matter, to the extent that their testimony could be characterized as providing specialized knowledge, appellant fails to demonstrate that the State would not have been permitted to present such testimony. *See Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1259-60 (2005) (discussing the range of possible remedies for failure to make appropriate expert witness disclosures). Moreover, as the child victim testified at trial and provided detailed testimony regarding the sexual activity she was subjected to by appellant, appellant fails to demonstrate a reasonable probability of a different outcome at trial had the district court refused to permit the two challenged witnesses to testify or limited their testimony to the facts that they observed.

(Ex. 68 at 3-4.)

The Nevada Supreme Court's decision was not objectively unreasonable. As previously discussed, petitioner has not shown that the result of the proceedings would have been any different had counsel objected to Norris' and Sheldon's expert testimonies. Exclusion of their limited expert testimony would not have been automatic or even likely in light of the relatively sparse expert testimony they proffered and the fact petitioner had his own expert witness. Petitioner again asserts that he was prejudiced by counsel's failure because he did not get a rebuttal psychological witness, psychological exam, or limiting instruction. However, as previously discussed, all of this prejudice *predates* the

---

[8]Petitioner's due process claim in Ground 20 is duplicative of other claims in the petition and will not be further discussed here. Ground 20 also complains of counsel's failure to object to witness vouching, but this claim is duplicative of Ground 23 and will not be further discussed here.

33

time that counsel could have made the objection—and thus is not prejudice that can be tied to counsel's failure to object. Also, as previously discussed, even if a continuance had been granted, petitioner would not have been entitled to a psychological exam of J.R. Petitioner does not otherwise argue that the outcome of trial would have been different had the jury not heard Norris' and Sheldon's expert testimonies, and the Court is not persuaded it would have been. Accordingly, petitioner has failed to establish deficient performance or prejudice, and the Nevada Supreme Court's rejection of this claim was objectively reasonable.

Finally, nothing in Ground 20 supports a claim of an equal protection violation.

Petitioner is not entitled to relief on Ground 20 of the petition.

**N. Ground 21**

In Ground 21, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated in connection with counsel's performance during the hearing on his motion to suppress the custodial interrogation. Particularly, petitioner asserts that counsel should have persuaded the court to require affirmative proof from the State that petitioner had been administered his *Miranda* warnings. (ECF No. 7 at 43; ECF No. 7-1 at 51-54.)

The Nevada Supreme Court rejected the ineffective assistance of counsel claim as follows:

> Fifth, appellant argues that his counsel was ineffective for failing to argue that the State violated *Miranda v. Arizona*, 384 U.S. 436 (1966), because there was no written waiver of his rights and the recording of his statement did not contain his oral waiver. Appellant also asserts that counsel erred by failing to ask the court to require the State to prove he made an intelligent waiver of his *Miranda* rights, given his use of prescription medication. Appellant fails to demonstrate either deficiency or prejudice for this claim as counsel filed a motion to suppress his statements and this court concluded on direct appeal that appellant knowingly and intelligently waived his *Miranda* rights. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011). Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel made further efforts seeking suppression of his statement.

(Ex. 68 at 4-5.) The Nevada Supreme Court's decision was not objectively unreasonable.

34

Counsel argued in the motion to suppress and at the hearing on the motion that there was no proof that petitioner had been read his *Miranda* warnings, that petitioner was "allegedly Mirandize[d]," and that the burden was on the State to prove it had Mirandized petitioner. (Ex. 38 (Tr. 11); Ex 74 at 5 & 7.) Counsel's performance was therefore not deficient. The Nevada Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law.

Finally, nothing in Ground 21 supports a claim of an equal protection violation, and the due process component of this claim is duplicative of Ground 4.

Petitioner is not entitled to relief on Ground 21.

**O. Ground 22**

In Ground 22, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because counsel was deficient when arguing that petitioner's interrogation responses were involuntary. (ECF No. 7 at 45; ECF No. 7-1 at 51-54.) Among other things, petitioner asserts that counsel failed to provide the trial court with evidence showing the side effects of Ambien, which petitioner was allegedly under the influence of during his police interrogation. (*Id.*) The Court considers this claim only to the extent it is not duplicative of Ground 21.

The Nevada Supreme Court rejected the ineffective assistance of counsel claim as follows:

> Appellant fails to demonstrate either deficiency or prejudice for this claim as counsel filed a motion to suppress his statements and this court concluded on direct appeal that appellant knowingly and intelligently waived his *Miranda* rights. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011). Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel made further efforts seeking suppression of his statement.

(Ex. 68 at 4-5.) The Nevada Supreme Court's decision was not objectively unreasonable.

There is little reason to conclude that either the trial court's or the Nevada Supreme Court's decision regarding the knowing and voluntary nature of petitioner's *Miranda* waiver would have been different had the courts been presented with literature on the

35

side effects of Ambien. Whatever the side effects were did not mean petitioner was suffering from them, especially as the Nevada Supreme Court noted that petitioner's responses during his interrogation were cogent and such a finding is amply supported by the record. (*See* Ex. 78.) It was therefore not objectively unreasonable for the state courts to conclude that additional efforts by counsel would not have been availing and that therefore petitioner had failed to demonstrate prejudice.

Finally, nothing in Ground 22 supports a claim of an equal protection violation, and the due process component of this claim is duplicative of Grounds 4 and 5.

Petitioner is not entitled to relief on Ground 22 of the petition.

**P. Ground 23**

In Ground 23, petitioner asserts that his rights to effective assistance of counsel, due process, equal protection and confrontation were violated because counsel failed to object to State witnesses repeatedly vouching for the credibility of J.R. and repeating J.R.'s hearsay.[9] (ECF No. 7 at 47; ECF No. 7-1 at 60-63.)

Petitioner's claim that counsel failed to object to the repetition of J.R.'s hearsay statements is plainly meritless. Counsel did object to the repetition of J.R.'s statements. (*See* Ex. 42 (Tr. 16-17).) Counsel was therefore not deficient in this respect.

The Nevada Supreme Court rejected the vouching claim as follows:

> Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Appellant does not cite to any statements that contained improper vouching for the credibility of the victim and the record does not reveal that any such vouching occurred. *See Browning v. State*, 120 Nev. 347, 359, 91 P.3d 39, 48 (2004). Appellant's claim is a bare claim, which is insufficient to demonstrate that he is entitled to relief. *See Hargrove*, 100 Nev. at 502-03, 686 P.2d at 225. Moreover, this court concluded on direct appeal that the State's witnesses did not vouch for the credibility of the victim, and accordingly, appellant fails to demonstrate any prejudice related to this claim. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011).

---

[9]Petitioner again raises a claim of ineffective assistance of counsel based on counsel's failure to object when the State's witnesses began giving expert testimony, but that claim is duplicative of Ground 18 and will not be discussed further here.

(Ex. 68 at 4.) This conclusion was not objectively unreasonable.

Petitioner asserts the following statements by Officer Norris constituted vouching for the veracity of J.R.:

- "She seemed very articulate" (Ex. 42 (Tr. 72));
- "She understood her different ways she generated for the body parts, and I found that rather amazing from a child that young of – of an age to be able to articulate something like that" (*Id.*)

(ECF No. 7-1 at 72.) Petitioner asserts the following statements by Sheldon constituted vouching for the veracity of J.R.:

- "I remember as far as the child did an, I thought, extremely good interview considering her age at five" (Ex. 42 (Tr. 92));
- "She presented real well. She presented real concise" (*Id.*);
- "And a lot of times she didn't necessarily repeat it the same way, which to me indicates the idea that possibly the child had been coached" (*Id.* at 92-93).

(ECF No. 7-1 at 72). It was not objectively unreasonable for the Nevada Supreme Court to conclude that none of these statements, save and except possibly the last, constituted vouching. And as to the last, trial counsel did object to this statement, and it was stricken. (Ex. 42 (Tr. 93).) As Respondents correctly point out, Sheldon's later testimony as to why Sheldon believed J.R. had not been coached had been elicited by defense counsel and was responsive to counsel's questions, which were clearly made with a strategic purpose in mind. (Ex. 42 (Tr. 105-14).) The Court cannot find that counsel's failure to object to these responses was outside the wide range of reasonable representation.

As to petitioner's confrontation claim, the Nevada Supreme Court held:

> [T]he child victim testified at trial which provided appellant the opportunity to confront the victim. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011).

(Ex. 68 at 6.) As previously discussed, the Nevada Supreme Court was objectively reasonable in concluding that petitioner's Confrontation Clause rights were not violated

37

by the admission of J.R.'s out-of-court statements because J.R. testified at trial. Counsel therefore was not deficient for failing to assert such a violation.

Finally, nothing in Ground 23 supports a claim of an equal protection violation, and the due process component of this claim is duplicative of Grounds 9 and 10.

Petitioner is not entitled to relief on Ground 23.

**Q. Ground 24**

In Ground 24, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because counsel did not object to the State's failure to notice Sheldon as an expert witness on "bodily fluids," Sheldon's vouching for the victim and "creation of facts not testified to." (ECF No. 7 at 49; ECF No. 7-1 at 73-76.) The vouching component of this claim is duplicative of Ground 23.

The Nevada Supreme Court rejected the ineffective assistance of counsel claim as follows:

> While the majority of these witnesses' testimonies related to their personal conduct in investigating this matter, to the extent that their testimony could be characterized as providing specialized knowledge, appellant fails to demonstrate that the State would not have been permitted to present such testimony. *See Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1259-60 (2005) (discussing the range of possible remedies for failure to make appropriate expert witness disclosures). Moreover, as the child victim testified at trial and provided detailed testimony regarding the sexual activity she was subjected to by appellant, appellant fails to demonstrate a reasonable probability of a different outcome at trial had the district court refused to permit the two challenged witnesses to testify or limited their testimony to the facts that they observed.

(Ex. 68 at 3-4.) The Nevada Supreme Court's decision was not objectively unreasonable.

In this claim, petitioner objects to what he asserts was expert testimony regarding the temperature of bodily fluids. In her statement to police when she was five years old, J.R. described Petitioner's semen on her stomach as "freezing" cold. (Ex. 77 at 11.) In challenging J.R.'s account, defense counsel asked Sheldon whether he would agree that semen is room temperature and not cold. (Ex. 42 (Tr. 112).) Sheldon agreed but later testified that semen could feel cold if left on the body for a period of time. (*Id.* at 112, 138.)

Petitioner asserts that counsel should have objected to Sheldon's testifying beyond the scope of his expertise and without notice of expert witness and no qualification as an expert. However, as Respondents correctly point out, it was defense counsel who initiated this line of questioning, and thus it would have been an entirely frivolous argument to object to the testimony as unnoticed. Further, counsel clearly initiated this line of questioning in order to cast doubt on J.R.'s account. Accordingly, there was a strategic reason for counsel's questions, and it was not outside the wide range of reasonable representation for counsel to pose them.

Petitioner additionally asserts that Sheldon created facts not in evidence when he testified that J.R. might have thought semen was freezing cold because it could become freezing cold if it had remained on her stomach in an air-conditioned room with a fan blowing. However, counsel did in fact object to this statement, and his objection was sustained. (Ex. 42 (Tr. 138).) There is no basis for finding deficient performance on this basis.

The Nevada Supreme Court's rejection of this claim was not objectively unreasonable.

Finally, nothing in Ground 24 supports a claim of an equal protection violation, and the due process component of this claim is duplicative of Ground 7.

Petitioner is not entitled to relief on Ground 24.

**R. Ground 25**

In Ground 25, petitioner asserts that his rights to effective assistance of counsel, due process, equal protection, confrontation and compulsory process were violated when counsel did not call a rebuttal expert to Sheldon's bodily fluid testimony.[10] (ECF No. 7 at 51; ECF No. 7-1 at 77-80.)

The Nevada Supreme Court rejected this claim as follows: "Appellant . . . does not demonstrate that there were any experts in these areas which would have testified in a

---

[10]The remainder of the allegations in Ground 25 are duplicative of Ground 24.

39

manner favorable to his defense or that there was a reasonable probability of a different outcome at trial had counsel presented any favorable expert testimony in these areas." (Ex. 68 at 5.) This conclusion was not objectively unreasonable. Petitioner has not shown that any expert witness existed who would have testified that semen on a child's stomach could not be described as "freezing cold." Even if such testimony had been provided, it is not reasonably likely that the jury would have disbelieved the entirety of J.R.'s testimony based on a description of semen given when she was five years old. Thus, Petitioner has not shown that counsel was deficient for failing to call such an expert or that Petitioner was prejudiced by the failure to try and find one. For much the same reason, Petitioner also cannot show a violation of his rights to compulsory process, which is a plainly meritless claim even if it were exhausted. Petitioner's claim that his Confrontation Clause rights were violated by this failure is also plainly without merit, even if exhausted, because Sheldon testified at trial. Finally, nothing in Ground 25 supports a claim of an equal protection violation.

Petitioner is not entitled to relief on Ground 25.

**S. Ground 26**

In Ground 26, petitioner asserts that his rights to effective assistance of counsel, due process, equal protection and confrontation were violated when counsel failed to object to the admission of the entirety of the audio of his police interrogation because it included J.R.'s repeated hearsay statements, Roberts' vouching for J.R., and Roberts' statements that he thought petitioner was lying. (ECF No. 7 at 53; ECF No. 7-1 at 81-84.)

The Nevada Supreme Court rejected petitioner's ineffective assistance of counsel claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to object to hearsay from the recordings of interviews with the child victim and that the recordings violated his right to confrontation. Appellant also argues that counsel was ineffective for failing to ensure that the recordings were edited to remove hearsay and vouching for the child victim. Appellant fails to demonstrate that his counsel's performance was deficient or that he was prejudiced. The trial court properly concluded that the recordings of the

child's interviews were admissible pursuant to NRS 51.385, and therefore, a hearsay objection to this evidence would have been futile. *See Donovan v. State*, 94 Nev. 671, 675, 584 P.2d 708, 711 (1978). In addition and as discussed on direct appeal, the child victim testified at trial which provided appellant the opportunity to confront the victim. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011). Moreover, appellant fails to demonstrate that the interview recordings contain improper vouching for the veracity of the child victim. Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel objected to the introduction of the interview recordings on these bases.

(Ex. 68 at 6-7.) The Nevada Supreme Court's conclusion was not objectively unreasonable.

An objection to the entire interrogation on hearsay grounds is not likely to have succeeded as J.R.'s statements were admissible. Further, for the reasons discussed previously, the failure to object did not cause petitioner any prejudice. Roberts' statements cannot be considered vouching in the context of the interrogation, and it is not reasonably likely that the jury took Roberts' statements during the interrogation as statements of his actual belief.

Finally, nothing in Ground 26 supports an equal protection claim, the due process claim is duplicative of Grounds 9 and 10, and petitioner's confrontation rights were not violated because both J.R. and Roberts testified trial.

Petitioner is not entitled to relief on Ground 26.

**T. Ground 27**

In Ground 27, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were further violated in connection with the audiotape of his interview because counsel did not object to the tape being submitted to the jury, failed to file a motion or request that the impermissible hearsay and vouching statements be redacted from the interview, and did not ask for an opportunity to object to each statement in the interview individually. (ECF No. 7 at 55; ECF No. 7-1 at 85-89.) Respondents argue that this claim is largely duplicative of Ground 28 and that petitioner offers no authority for his argument that evidence admitted at trial cannot go to the jury.

The Court agrees with respondents. Petitioner's claim that the audio recording should not have been submitted to the jury is frivolous. It was evidence introduced at trial. There is little otherwise to differentiate this claim from Ground 26, and it must be rejected on the same grounds as Ground 26.

Petitioner is not entitled to relief on Ground 27.

**U. Ground 28**

In Ground 28, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated when counsel failed to object to the introduction of evidence that petitioner was featured on "America's Most Wanted." (ECF No 57; ECF No. 7-1 at 90-93.) The Nevada Supreme Court rejected petitioner's claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to object to testimony regarding his feature on America's Most Wanted. Appellant failed to demonstrate that he was prejudiced. The challenged testimony was considered on direct appeal under a plain error standard and this court concluded that comments did not prejudice appellant, as the show was only mentioned twice during trial, and because there was substantial evidence of appellant's flight presented at trial and the jury would have learned he was a fugitive even without reference to America's Most Wanted. *Romano v. State*, Docket No. 54303 (Order of Affirmance, April 28, 2011). Moreover, appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel objected to testimony regarding his appearance on America's Most Wanted as any error in admitting the brief reference to that show was harmless. *See Valdez v. State*, 124 Nev. 1172, 1188-89, 196 P.3d 465, 476 (2008).

(Ex. 68 at 2.) The Nevada Supreme Court's decision was not objectively unreasonable.

Following rulings by the trial court, the jury was instructed on and shown evidence that petitioner had fled before his first trial; and J.R.'s testimony at trial was articulate and vivid. Under these circumstances, petitioner cannot show a reasonable likelihood of a different outcome had counsel objected and the references to "America's Most Wanted" stricken. Petitioner has not therefore established prejudice.

Petitioner is not entitled to relief on Ground 28.

///

## V. Ground 29

In Ground 29, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because counsel failed to object to the introduction of "flight evidence" without an appropriate pre-trial hearing. (ECF No. 7 at 59; ECF No. 7-1 at 96-99.) Petitioner argues that counsel should have requested that the court conduct a *Petrocelli*[11] hearing to determine the admissibility of his flight, which he asserts constitutes "prior bad act evidence." (*Id.*)

The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to object to evidence of his flight as improper prior-bad-act evidence. Appellant also asserts that his counsel improperly failed to request a hearing pursuant to *Petrocelli v. State*, 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985), prior to the introduction of the flight prior-bad-act evidence. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Counsel filed a pretrial motion to preclude reference to appellant's flight, but the district court denied the motion. In addition, the flight evidence was not introduced as a prior bad act; rather it was properly introduced to demonstrate that appellant fled with the consciousness of guilt. *See Rosky v. State*, 121 Nev. 184, 199, 111 P.3d 690, 699-700 (2005); *Turner v. State*, 98 Nev. 103, 106, 641 P.2d 1062, 1064 (1982). Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel objected to the flight evidence or sought a *Petrocelli* hearing regarding that evidence.

(Ex. 68 at 7-8.)

The Nevada Supreme Court's decision was not objectively unreasonable, as petitioner's contentions are completely without merit. Counsel did attempt to suppress evidence of petitioner's flight but was ultimately unsuccessful. (Ex. 38 (Tr. 8-10); Ex. 73.) There was a pretrial hearing at which counsel argued vigorously against the introduction of this evidence, after which the trial court concluded the evidence was appropriately admitted. Other than arguing that counsel should have pressed for an "appropriate pretrial

---

[11]A party seeking to introduce bad acts evidence at trial must request a *Petrocelli* hearing outside the presence of the jury and establish that: "(1) the prior bad act is relevant to the crime charged and for a purpose other than proving the defendant's propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Newman v. State*, 298 P.3d 1171, 1178 (Nev. 2013).

hearing," petitioner does not demonstrate how reasonably competent counsel should have handled the flight issue differently than his counsel in fact did. And it was not unreasonable for counsel to fail to demand a *Petrocelli* hearing as petitioner's flight does not qualify as a prior bad act subject to such a hearing. Accordingly, petitioner has not demonstrated either deficient performance or prejudice and the Nevada Supreme Court's rejection of this claim was not contrary to, or an unreasonable application of, clearly established federal law.

For many of the same reasons, petitioner's due process claim is plainly without merit.

Finally, nothing in Ground 29 supports a claim of an equal protection violation.

Petitioner is not entitled to relief on Ground 29.

**W. Ground 30**

In Ground 30, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because counsel failed to object to Jury Instruction No. 12, relating to flight. (ECF No. 7 at 61; ECF No. 7-1 at 100-03.) Petitioner further asserts that before an instruction on flight can be given, the State must show the defendant had a plan to flee or fled with a consciousness of guilt pursuant to *Tavares v. State*, 30 P.3d 1128 (Nev. 2001). (*See* ECF No. 7-1 at 97, 100-03.) Petitioner asserts counsel should have demanded a hearing where the State would have to prove these things, and if he had done so, the instruction would not have been given because the State could not meet its burden. (*Id.* at 101.) The Nevada Supreme Court rejected the ineffective assistance of counsel claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to argue that the State failed to prove that he intended to flee and for failing to object to the flight instruction. Appellant fails to demonstrate that his trial counsel's performance was deficient or that he was prejudiced. Counsel filed a pretrial motion to preclude reference to appellant's flight, but the district court denied the motion. In addition, the district court properly instructed the jury on flight because there was substantial evidence that appellant fled with the consciousness of guilt, as appellant fled to Florida shortly before the beginning of his trial, used a different name while in

44

Florida, and appellant himself testified that he left Nevada because he didn't want to go back into custody. *See Walker v. State*, 113 Nev. 853, 871, 944 P.2d 762, 773 (1997); *see also United States v. Hernandez-Miranda*, 601 F.2d 1104, 1107 (9th Cir. 1979) (finding that "[f]light immediately after the commission of a crime, or immediately prior to trial, both support an inference of consciousness of guilt"). Appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel argued that the State failed to prove he intended to flee or objected to the flight instruction.

(Ex. 68 at 8.) The Nevada Supreme Court's decision was not objectively unreasonable.

As discussed, counsel argued vigorously against the introduction of flight evidence but was not successful. Petitioner clearly fled. In light of this, counsel's failure to further object to an instruction on flight cannot be viewed as deficient. Petitioner's assertion that evidence of his flight would not have been admissible pursuant to *Tavares* is without merit. *Tavares* involved a defendant who had not actually fled but had only told someone he wanted to flee. The Nevada Supreme Court held that this statement, without more, was insufficient to instruct the jury on flight. Here, petitioner actually fled the jurisdiction and remained outside of it until apprehended almost three years later. This was sufficient to submit the question of whether petitioner fled with a consciousness of guilt to the jury and is wholly distinguishable from *Tavares*. The question of whether petitioner fled with a consciousness of guilt was properly submitted to the jury, and petitioner had the opportunity to convince the jury that he fled for other reasons. (*See* Ex. 43 (Tr. 101-09).) Accordingly, petitioner cannot show that any objection to the jury instruction or the State's failure to meet the *Tavares* standard should have been raised by reasonably competent counsel or that such objections would have been meritorious. The Nevada Supreme Court's rejection of this claim was not therefore objectively unreasonable.

For many of the same reasons, petitioner's due process claim is plainly without merit. Finally, nothing in Ground 30 supports a claim of an equal protection violation.

Petitioner is not entitled to relief on Ground 30 of the petition.

45

## X. Ground 31

In Ground 31, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because counsel failed to object to the reference to J.R. as a "victim" in the jury instructions. (ECF No. 7 at 63; ECF No. 7-1 at 104-06; ECF No. 7-2 at 1.) Respondents argue that petitioner cites no law finding the use of the word victim to be prejudicial. The Nevada Supreme Court rejected this claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for failing to argue that the jury instructions improperly used the term "victim." Appellant fails to demonstrate that his counsel's performance was deficient or that he was prejudiced. Appellant does not cite to any case law holding that the use of the word "victim" at trial is prejudicial to a defendant or that objectively reasonable counsel would object to use of that term. Appellant also fails to demonstrate that the use of the word "victim" in this case created an inference of guilt. The jury was instructed on the presumption of innocence, and, in light of the facts of this case, appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel objected to use of the term "victim" in the instructions.

(Ex. 68 at 8-9.) For the reasons discussed in Ground 14, the Nevada Supreme Court's decision was not objectively unreasonable. As discussed, where the word "victim" was used, it was never specific to J.R. and there is no clearly established federal law forbidding the use of the word "victim" in jury instructions. It did not fall outside the wide range of reasonable representation for counsel to fail to object to use of the word victim in the instructions. The Nevada Supreme Court's rejection of this claim was therefore not objectively unreasonable.

Finally, nothing in Ground 31 supports a claim of an equal protection violation, and the due process component of this claim is duplicative of Ground 14.

Petitioner is not entitled to relief on Ground 31.

## Y. Ground 32

In Ground 32, petitioner asserts that his rights to effective assistance of counsel, due process, and equal protection were violated because counsel failed to object when the State did not disclose the audio tape recordings of his interrogation and J.R.'s

interviews until the last minute. (ECF No. 7 at 65; ECF No. 7-2 at 4-7.) Petitioner argues that the late disclosure prevented the defense from authenticating the tapes and obtaining an expert who could have testified that the tape recorder was turned off after each of J.R.'s answers during her interview with her mother. (*Id.*)

The Nevada Supreme Court rejected the ineffective assistance of counsel claim as follows:

> [A]ppellant argues that his trial counsel was ineffective for waiting until one day before the start of trial to file a motion requesting discovery and failing to request a continuance of trial in order to review the discovery that was received in an untimely manner. Appellant fails to demonstrate either deficiency or prejudice for this claim because counsel filed a motion requesting discovery approximately nine months before the start of trial. Moreover, while counsel stated at a pretrial hearing that he did not receive the actual recordings of the interviews in a timely manner, he informed the court that he received transcripts of the interviews far in advance of trial. Under these circumstances, appellant fails to demonstrate a reasonable probability of a different outcome at trial had counsel requested a continuance to further review the evidence.

(Ex. 68 at 9.) The Nevada Supreme Court's conclusion was not objectively unreasonable.

Petitioner has not shown that any of the audiotapes were altered or could have been challenged on authenticity grounds. Further, counsel did note the untimely disclosure of the audio tapes, but he had the transcripts for months before trial and admittedly made a strategic decision not to challenge the audiotapes because he wanted the tape recorded by J.R.'s mother to come in. (Ex. 41 (Tr. 7-9 & 135).) Further, counsel did in fact point out that the tape was stopped after many of J.R.'s answers to her mother. (*See* Ex 41 (Tr. 196).) Petitioner therefore cannot show any prejudice from the lack of expert testimony in that regard or deficient performance, and the Nevada Supreme Court's rejection of this claim was not objectively unreasonable.

The due process claim is resolved on the same grounds. Petitioner has failed to show prejudice because he has not shown that any of the tapes would have been susceptible to attack beyond the tape recorded by J.R.'s mother, and counsel did, in

47

1    effect, point out to the jury that the tape had been stopped several times during the
2    interview.

3         Finally, nothing in Ground 32 supports a claim of an equal protection violation.

4         Petitioner is not entitled to relief on Ground 32.

5    **Z. Ground 33**

6         In Ground 33, petitioner asserts that his rights to effective assistance of counsel,
7    due process, and equal protection were violated when appellate counsel failed to
8    challenge the trial court's denial of petitioner's motion for a psychological examination on
9    constitutional grounds. (ECF No. 7 at 67; Ex. 60 at 21-24.)[12] The Nevada Supreme Court
10   rejected this claim as follows:

11            Appellant argues that his counsel was ineffective for failing to raise a
12       claim regarding the denial of his request for a psychological examination of
         the victim under constitutional grounds, which he asserts would have
13       provided him a favorable standard of review on appeal. Appellant fails to
         demonstrate that his counsel's performance was deficient or that he was
         prejudiced. Counsel raised the underlying claim on appeal and this court
14       properly examined that claim under the abuse-of-discretion standard of
         review. Romano v. State, Docket No. 54303 (Order of Affirmance, April 28,
15       2011). Appellant fails to demonstrate that he would have gained a more
         favorable standard of review by asserting that the claim was raised under
16       the constitution. Appellant fails to demonstrate a reasonable likelihood of
         success on appeal had counsel raised further arguments regarding this
17       issue on appeal.

18   (Ex. 68 at 10.) The Nevada Supreme Court's conclusion was not objectively
19   unreasonable.

20        As discussed *supra*, petitioner has not shown that the denial of a psychological
21   exam rendered his trial fundamentally unfair. He cannot therefore show that, even
22   assuming counsel had raised the issue as a constitutional claim, that he would have had
23   a greater likelihood of success on appeal. Accordingly, petitioner has not established
24   ineffective assistance of appellate counsel, and is not entitled to relief on Ground 33.

25

26

27        _____

28        [12]Page citations are to the CM/ECF number at the top of the page.

## V.    CERTIFICATE OF APPEALABILITY

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Allen,* 435 F.3d at 951*;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Allen,* 435 F.3d at 951 (quoting *Slack*, 529 U.S. at 484). To meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The Court will therefore deny petitioner a certificate of appealability.

## VI.    CONCLUSION

In accordance with the foregoing, it is hereby ordered that the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 7) is denied on its merits, and this action is therefore dismissed with prejudice.

It is further ordered that the Court denies petitioner a certificate of appealability, as reasonable jurists would not find the Court's decision to be debatable or wrong, for the reasons discussed herein.

The Clerk of Court is directed to enter final judgment accordingly and close this case.

///

DATED THIS 27th day of September 2018.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE